## TERESA MOCKEVICZ
*vs.*
## JOHN MOCKEVICZ

Superior Court  |  **New Haven County**  |  File No. 59044

MEMORANDUM FILED FEBRUARY 4, 1941.

*Albert W. Cretella,* of New Haven, for the Plaintiff.

*Goldstein & Bracken,* of New Haven, for the Defendant.

BALDWIN, J.   The parties to this action eloped and were married March 20, 1934.   Upon their return from their elopement plaintiff went to the home of her people and the defendant return to his sisters and brothers with whom he was living and they continued so to live for only two or three days when the defendant took his wife to live with him with his sisters and his brothers.

They were both then quite young and his salary was insufficient to maintain a separate home.   The home to which they went was ample in rooms and space; they had a separate sleeping room but ate and lived with his sisters and brothers as a single family.

Plaintiff is Swedish and a Lutheran.   The defendant is a Lithuanian and a Catholic.   This difference in nationalities and in religions and the living in his family were productive of discord between them.   Daily the plaintiff, about the time defendant went to work in the morning, would go to her parent's home and there spend the day, returning about the time he returned from his work.   This practice continued over a period of years, continuing so long as they made their home

with his sisters and brothers, and this, at times, caused some discord.

They have two children, the births of whom caused somewhat unusual expense and involved the defendant in debt. They moved and set up housekeeping by themselves and defendant got a job in a tavern located next to the house in which they lived. This job was in addition to a job he already had as a truck driver. He took this extra job in order to increase his earnings to enable him to support his family and to take care of his indebtedness, which was upwards of $1,200.

The holding of two jobs took him away from the home much of the time and this and employment in a tavern was a matter of quite some annoyance to the plaintiff. The employment in the tavern was not as desirable to the defendant as he would have liked, but the need of increasing his earnings impelled him to continue it.

Bickerings between them occurred, and, on occasions, they said insolent and offensive things to each other and defendant at times used some profane and some very vile language to the plaintiff. He was, however, at times, not without provocation by the plaintiff—their troubles were not all one-sided.

On some one or two occasions, and in company, defendant has done some offensive and annoying things—done, as he thought, to be playful and smart, but in reality these things were the product of purely bad manners; they were not of evil design. He is given a little too freely to "wise cracking." On a few occasions he has drunk to the extent of becoming intoxicated, but this has not become a habit; it has occurred but a very few times, and on some of the occasions it was induced by their bickerings—which, with some, is, but never should be, an inducement. He by no means can be said to be habitually intemperate. He is industrious and frugal and he is desirous of paying his bills (which he has reduced to some $400) and of being out of debt. He is devoted to his children and to his wife and is desirous of maintaining his home and of living with his wife and children and that they together bring the children up and educate them.

The plaintiff has not always manifested that patience and forbearance that should have been employed; she has been inclined to magnify some rather inconsequential and unimportant

things and she has failed to evaluate those stable and desirable qualities in a husband and father that the defendant does possess. Even more serious than this in their affairs, the plaintiff has been subjected to influence of members of her family and that of some of her so-called friends that has been decidedly contrary to her best interests and that of her children and the defendant. The difference in the nationality and in the religion of these parties should be laid aside by them. The nationality from which they each spring and the religion of each has produced outstanding characters of kindliness and gentleness, characters that have contributed much to the good and the happiness of life. These parties should each take more thought of the good in the nationality and the religion of the other and emulate those of such qualities and characters in the nationality and in the religion of the other. This outside influence should be removed. These children should be entitled to the joint and cooperative development and bringing up and education that these parents working together only can provide, and that cannot be provided in any other way. These parents owe to each other a duty to bear and to forbear some faults and shortcomings in each other; they owe duties to these children that can only be discharged by their daily cooperative efforts, and these children, to whom they are both devoted, are entitled to have these parents make some sacrifices for their future welfare.

"....there are trials causing much weariness and suffering, which parties to the marriage contract must bear; the policy of the State, as well as the sacred nature of the marriage covenant, requires patient endurance." *McEvoy vs. McEvoy*, 99 Conn. 427, 431. *See, also, Morehouse vs. Morehouse*, 70 id. 420.

The conduct of the defendant has not been that "which in itself is a practical annulling and repudiation of the marriage covenant." *McEvoy vs. McEvoy, supra*, p. 431. It has not constituted intolerable cruelty. "There is nothing found which is necessarily inconsistent with a reconciliation and a resumption of cohabitation as husband and wife." *McEvoy vs. McEvoy, supra*, p. 431.

Judgment may enter for the defendant dismissing the complaint.